UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNTHIA B. BENJAMIN,

     Plaintiff,

v.                                    CASE No. 8:13-CV-2765-T-24TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____

## REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of

her claim for supplemental security income payments.[1] Because the decision

of the Commissioner of Social Security is supported by substantial evidence

and contains no reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was forty-one years old at the time of the

administrative hearing and who has an eighth grade education, has no past

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this
court dated January 5, 1998. See also Local Rule 6.01(c)(21).

relevant work (Tr. 42, 46).[2]  She filed a claim for supplemental security income payments, alleging that she became disabled due to "[m]ental problems, depression, [and] bipolar" (Tr. 154). The claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge.  The law judge found that the plaintiff had severe impairments of "anxiety related disorders, major depressive disorder, schizoaffective disorder, possible borderline intellectual functioning (BIF), malingering[,] history of cocaine abuse (in brief remission), and history of alcohol dependence" (Tr. 24).  The law judge concluded that, with these impairments, the plaintiff (Tr. 27):

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can be expected to understand, carry out, and perform 1, 2, and 3 step instructions consiste[nt] with

---

[2]At the administrative hearing, the plaintiff said that she finished the eighth grade, but she did not start high school (Tr. 46).  The plaintiff also testified that she went up to "[a]bout the ninth" grade (Tr. 45).

However, the plaintiff made inconsistent statements about her education to the Social Security Administration and her medical providers.  For example, the plaintiff's disability report states that she completed the tenth grade (Tr. 155).  In addition, the plaintiff told a provider at Suncoast Center for Community Mental Health, Inc., "I quit 11th gr because I joined gangs in CA when I was 16-18 .... I went to business college in CA for 5 mos.  I did not finish.  I never got my GED" (Tr. 363).

> unskilled work.   She is capable of less than
> occasional interaction with the general public. She
> is unable to perform fast production pace work.
> She is capable of performing second grade
> calculations, fourth grade spelling, and first grade
> passage comprehension.

Based upon the testimony of a vocational expert, the law judge found that

there are jobs that exist in significant numbers in the national economy that

the plaintiff could perform, such as kitchen helper/dishwasher, housekeeper,

and produce packer (Tr. 32-33).  The law judge therefore ruled that the

plaintiff was not disabled (Tr. 33).  The Appeals Council let the decision of

the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less than

twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on two grounds. Specifically, the plaintiff complains that the law judge (1) failed to evaluate properly the medical opinions of record and (2) erred by not finding that the plaintiff meets the requirements of Listing 12.05 B.  Neither of these contentions warrants reversal.

A.  The plaintiff first argues that the law judge failed to assess properly the opinions of the examining psychologists, Dr. Linda Appenfeldt and Dr. Richard Sorensen (Doc. 19, pp. 13-16).  This assertion is without merit.

With respect to the opinions of Dr. Appenfeldt and Dr. Sorensen,

the law judge said (Tr. 27-28):

> On June 24, 2010, Dr. Linda Appenfeldt, Ph.D., conducted a consultative mental status examination (Exhibit 6F). On examination, the claimant was difficult to interview because she nodded several times, rather than responded verbally. In addition, while providing an incorrect answer, a faint smile was detected. Her cognitive screening revealed intact calculations, and she was able to do simple, oral mathematical problems. Her thought content reflected no evidence of obsessions, compulsions, or guilt. The consultant noted that there was a possibility that the claimant was exaggerating and magnifying some problems and minimizing others in order to obtain financial compensation. The claimant was diagnosed with malingering, conduct disorder, nicotine dependence, alcohol dependence (in history), and cocaine dependence (in history). She was assigned a global assessment of functioning (GAF) score of 65. Dr. Appenfeldt opined that the claimant was able to perform work related mental activities involving understanding, memory, sustained concentration, persistence, and adaptation. In addition, she was able to sit, stand, walk, handle objects, hear, speak, and travel. Dr. Appenfeldt's opinion is given significant weight since this opinion is consistent with the medical record as a whole.
>
> On August 31, 2011, Dr. Richard Sorensen, Ph.D., conducted a psychological evaluation (Exhibit 15F). The claimant was referred for a personality and learning disabilities evaluation by Vocational Rehabilitation. On examination, the claimant

appeared extremely agitated, restless, constantly in motion, and visibly uncomfortable. The psychologist noted that the claimant was determined to have the evaluation concluded as quickly as possible, and she required coaxing in order to remain on task; however, it appeared that she made her best effort. Test results indicated that the claimant performed well on the measure of written expression (84, grade IV), but she showed marked weakness on measures involving reading comprehension (75, grade I) and mathematics calculations (64, grade II). The claimant was diagnosed as having mild mental retardation, schizoaffective disorder, panic disorder, and posttraumatic stress disorder. Dr. Sorensen opined that the claimant would not be capable of competitive employment given her current state of functioning. However, the psychologist indicated that the claimant obviously needed to be placed back on her antipsychotic medications, and with that maybe capable of some type of unskilled part-time employment. In addition, she would be limited to simple, routine, and repetitive types of work. Dr. Sorensen's opinion is given some weight; however, the severity of some of the limitations is without substantial support from the other evidence of record, which obviously renders it less persuasive. In fact, Dr. Sorensen appeared to have relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

The plaintiff contends that the law judge erred in giving significant weight to the opinion of Dr. Appenfeldt. In this connection, the plaintiff states that "[n]o other medical provider even came close to seeing malingering on the part of Plaintiff ...." (Doc. 19, p.13). This argument is unpersuasive because, to start with, no treating medical provider specifically commented on malingering and, therefore, the record does not indicate any treating source's opinion on that matter one way or the other.

More significantly, Dr. Appenfeldt gave a cogent reason for her opinion that the plaintiff was malingering. Thus, Dr. Appenfeldt reported (Tr. 371):

> [W]hile providing an incorrect answer, a faint smile was detected. This was evident when she stated a bird has four legs.

The law judge could reasonably conclude that this explanation, coupled with the psychologist's expertise, provided a solid basis for the diagnosis of malingering.

Furthermore, while the law judge accepted Dr. Appenfeldt's diagnosis of malingering, that diagnosis did not play any substantial role in the law judge's evaluation of the plaintiff's claim. Thus, despite that diagnosis, the law judge found that the plaintiff had severe mental

impairments of anxiety related disorders, major depressive disorder, schizoaffective disorder, and possible borderline intellectual functioning (Tr. 24). Consequently, the law judge found that, due to those mental impairments, the plaintiff had a number of mental functional limitations (Tr. 27). In addition, in concluding that the plaintiff was not wholly credible (a determination not challenged by the plaintiff), the law judge did not even mention the issue of malingering (Tr. 30-31).

Also, the law judge could reasonably decide to give significant weight to Dr. Appenfeldt's opinion because it "is consistent with the medical record as a whole" (Tr. 28). Thus, the Commissioner correctly points out that the medical records from the Boley Centers; Suncoast Center for Community Mental Health, Inc.; and Family Emergency Treatment Center do not contradict Dr. Appenfeldt's opinion (Doc. 20, pp. 6-7).

Moreover, the plaintiff's activities of daily living support Dr. Appenfeldt's conclusions. For example, as the law judge discussed, the plaintiff "testified that she is able to ride the bus, ride her bike, watch movies, play board games, and socialize with her family" (Tr. 29).

In light of the evidence before the law judge, she could reasonably decide to give significant weight to Dr. Appenfeldt's opinion.

The plaintiff contends further that the law judge erred in only giving some weight to Dr. Sorensen's opinion. In this respect, the plaintiff asserts that "[t]he ALJ says that Dr. Sorensen's opinion is without support from other evidence of record" (Doc. 19, p. 14). That is not what the law judge said. Rather, she stated: "Dr. Sorensen's opinion is given some weight; however, the severity of some of the limitations is without substantial support from the other evidence of record, which obviously renders it less persuasive" (Tr. 28).

The plaintiff seems to suggest that the law judge overlooked or disregarded Dr. Sorensen's diagnosis of schizoaffective disorder (Doc. 19, p. 14). However, the judge expressly found that the plaintiff's schizoaffective disorder, as well as anxiety related disorders and a major depressive disorder, constituted severe impairments (Tr. 24). Accordingly, this suggestion is baseless.

The plaintiff also complains that the law judge failed to accept Dr. Sorensen's diagnosis of posttraumatic stress disorder. In order to show that the law judge erred with respect to the plaintiff's posttraumatic stress disorder, the plaintiff must show that she had functional limitations from that condition that were not included in the law judge's determination of the

plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how her posttraumatic stress disorder created specific functional limitations beyond the law judge's residual functional capacity determination.

The plaintiff also argues that Dr. Sorensen's opinion is supported by the third party function reports completed by her friends, Merikye Gibbons and Shiree Flournory (Doc. 19, pp. 15-16). The plaintiff notes that, among other things, her friends reported that it takes her a long time to shop, she sometimes forgets to wear deodorant, she has a high temper, she gets frustrated easily, and she believes everyone is "out to get her" (id.).

The law judge discussed the third-party function reports in her decision. In this regard, she stated (Tr. 31):

The undersigned has considered third party reports from the claimant's friends, indicating the claimant has some limitations (Exhibits 5E and 6E). The claimant's friends indicated that she needed reminders to bathe and she received help with cooking and cleaning. The statements of the claimant's friends do not establish that the claimant is disabled. Since the claimant's friends are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of their statements is questionable. Moreover, by virtue of their relationship with the claimant, the friends cannot be considered disinterested third parties whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the friends' reports because their reports, like the claimant's, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

This explanation is reasonable and supports the conclusion to discount the third party function reports. Importantly, the plaintiff has not shown the law judge's analysis to be inaccurate. Therefore, the plaintiff's reliance on her friends' statements to bolster Dr. Sorensen's opinion is baseless.

The plaintiff further complains that "Dr. Appenfeldt did no testing to support her lone-wolf diagnosis of malingering while Dr. Sorensen used three very well-established, well-respected, widely used, reliable and valid psychological tests ..." (Doc. 19, p. 16). Dr. Sorensen administered the Wechsler Adult Intelligence Scale-IV test (WAIS-IV), and concluded that the plaintiff had a verbal comprehension score of 66, a perceptual reasoning score of 63, a working memory score of 60, a processing speed score of 56, and a full-scale IQ score of 55 (Tr. 450-51). In this connection, Dr. Sorensen said, "These results indicate that overall, Ms. Benjamin measures in the Extremely Low range of intellectual functioning, scoring well below the 1st percentile. She shows particular difficulty on tasks involving processing speed" (Tr. 451). With respect to the Woodcock-Johnson Tests of Achievement-III, Dr. Sorensen noted that the plaintiff's results (grade II on calculation, grade IV on spelling, and grade I on passage comprehension) reflect "marked weakness on measures involving reading comprehension and mathematics calculation" (id.). Finally, Dr. Sorensen indicated that the plaintiff scored in the "severe" range on the Beck Depression Inventory-II (id.).

Dr. Sorensen's use of testing did not require the law judge to give his opinion more than some weight. In the first place, the law judge

reasonably found that the validity of Dr. Sorensen's testing was questionable.

Thus, the law judge explained (Tr. 27):

> [T]he psychologist [Dr. Sorensen] noted that the claimant was not taking her psychotropic medications at the time of her evaluation, and it was possible that she was more functional when she was appropriately medicated. In addition, the examiner noted that it appeared the claimant made her "best effort", but the examiner did not perform any validity tests to rule out faking, and there were no comments as to the validity of the testing, especially since the claimant gave inconsistent reports to the examiner.

Further, although Dr. Appenfeldt did not administer psychological tests during her examination of the plaintiff, she did conduct a general clinical evaluation with mental status (Tr. 371). This is a common technique for a mental evaluation, and there is no reason to think this approach was inadequate in the plaintiff's case. Moreover, as previously discussed, Dr. Appenfeldt gave a cogent reason for her diagnosis of malingering.

Also, it is noteworthy that the law judge incorporated in her residual functional capacity determination Dr. Sorensen's results from the Woodcock-Johnson Tests of Achievement-III. Thus, the law judge included in that determination a limitation to "performing second grade calculations,

fourth grade spelling, and first grade passage comprehension" (Tr. 27). This confirms that the law judge gave Dr. Sorensen's opinion some weight.

The plaintiff next contends that the law judge "erred in giving great weight to the opinions of the non-examining psychologists" (Doc. 19, p. 16). However, the plaintiff misperceives the opinion to which the law judge gave great weight.

The record contained an opinion from Dr. Frances Martinez, a non-examining reviewing psychologist (Tr. 375). Dr. Martinez concluded that the plaintiff did not have a severe mental impairment (id.). In that respect, Dr. Martinez opined that the plaintiff had no limitation in the areas of activities of daily living and social functioning and only a mild limitation in the area of concentration, persistence or pace (Tr. 385). The law judge clearly gave little weight to those opinions, concluding instead that the plaintiff had several severe mental impairments and had moderate difficulties in social functioning and concentration, persistence or pace and mild limitations in activities of daily living (Tr. 25-26). The law judge obviously did not give great weight to Dr. Martinez's opinion on these matters, since she did not agree with any of them.

The record also contains a statement by Dr. Nancy Hinkeldey, another non-examining reviewing psychologist. That statement was simply that "I have reviewed all the evidence in file and the PRTF dated 07/09/10 [Dr. Martinez's opinion] is affirmed as written" (Tr. 398). Since Dr. Hinkeldey simply agreed with Dr. Martinez's opinion, the law judge clearly did not give great weight to Dr. Hinkeldey's opinion either.

Under these circumstances, the law judge's comment that she gave great weight to the opinions of the non-examining reviewing psychologists refers only to their opinion that the plaintiff is not disabled. Thus, the law judge stated (Tr. 31-32):

> As for the opinion evidence, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services supports a finding that the claimant is able to work. Although these physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, these opinions are given great weight since they are consistent with the record as a whole.

In other words, the only opinions of the reviewing psychologists to which the law judge afforded great weight were the opinions that the plaintiff was able to work. This is the only reading of the law judge's decision that makes

sense, since the law judge expressly stated that she gave Dr. Martinez's opinion "less weight" (Tr. 26) (and did not even mention Dr. Hinkeldey's summary opinion), and she did not accept Dr. Martinez's opinion that the plaintiff did not have a severe impairment or her opinions on the key areas of activities of daily living, social functioning, and concentration, persistence, or pace.

In short, the law judge did not err in evaluating the medical opinions of record.

B.  As a second issue, the plaintiff challenges the law judge's conclusion that she did not meet Listing 12.05 B of Appendix 1 for mental retardation (Doc. 19, pp. 17-22).[3]  A condition listed in Appendix 1 (20 C.F.R. Part 404, Subpart P, Appendix 1) is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations.  Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).  The plaintiff bears the burden of showing that she meets, or equals, a listing.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th

---

[3]On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." Hickel v. Commissioner of Social Security, 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013), citing 78 Fed. Reg. 46,499, 46,501.  This nominal change does not affect the definition of the disorder.  For consistency with the plaintiff's memorandum, the disorder is referred to as mental retardation in this Report and Recommendation.

Cir. 1987); Perkins v. Commissioner of Social Security, 553 Fed. Appx. 870,

872 (11th Cir. 2014). Moreover, "when a claimant contends that [s]he has an

impairment meeting the listed impairments entitling h[er] to an adjudication

of disability under regulation 404.1520(d) [or 416.920(d)], [s]he must present

specific medical findings that meet the various tests listed under the

description of the applicable impairment or, if in the alternative [s]he

contends that [s]he has an impairment which is equal to one of the listed

impairments, the claimant must present medical evidence which describes

how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d

1350, 1353 (11th Cir. 1986).

As indicated, the plaintiff contends that she meets Listing 12.05

B of Appendix 1. That listing states:

> 12.05 *Mental Retardation*: Mental retardation
> refers to significantly subaverage general
> intellectual functioning with deficits in adaptive
> functioning initially manifested during the
> developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is
> met when the requirements in A, B, C, or D are
> satisfied.
>
> . . .

        B. A valid verbal, performance, or full scale IQ of
        59 or less; ....

In Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis

added), the court said that, "[t]o be considered for disability benefits under

section 12.05, a claimant must at least (1) have significantly subaverage

general intellectual functioning; (2) have deficits in adaptive behavior; and

(3) have manifested deficits in adaptive behavior before age 22." The law

judge reasonably found that the plaintiff does not meet any of these

requirements.

      The plaintiff predicates her argument on an IQ score assessed by

Dr. Sorensen. As previously discussed, Dr. Sorensen administered the WAIS-

IV in August 2011, and concluded that the plaintiff had a full-scale IQ score

of 55 (Tr. 451).

      The law judge expressly found that "[t]he requisites of listing

12.05B, are also not met because the claimant does not have a valid verbal,

performance, or full scale IQ of 59 or less" (Tr. 26). Thus, as the law judge

explained (Tr. 27):

            [T]he psychologist noted that the claimant was not
            taking her psychotropic medications at the time of
            her evaluation, and it was possible that she was
            more functional when she was appropriately

> medicated.  In addition, the examiner noted that it
> appeared the claimant made her "best effort", but
> the examiner did not perform any validity tests to
> rule out faking, and there were no comments as to
> the validity of the testing, especially since the
> claimant gave inconsistent reports to the examiner.

These reasons provide an adequate basis for the law judge's finding that the

IQ score of 55 was not valid.

The plaintiff argues that the lack of validity testing during Dr.

Sorensen's examination and the doctor's silence on the issue of validity do

not support the law judge's conclusion that the test results were invalid (Doc.

19, pp. 18-19).  The law judge, however, has the authority and responsibility

to draw inferences from the evidence.  The inference he clearly drew from Dr.

Sorensen's report is that the IQ score of 55 was invalid.  As explained, this

inference is reasonably supported by the evidence of record.

Of course, in order to meet listing 12.05, the plaintiff has to

demonstrate not only that she had a qualifying IQ score, but also that she had

"deficits in adaptive functioning initially manifested during the

developmental period." Here, the law judge found that the plaintiff does not

have the necessary deficits in adaptive functioning to meet listing 12.05 B.

Specifically, the law judge said (Tr. 27):

> The claimant's school records do not reflect she
> was in special education classes in California or
> Florida, nor does the record reflect that she has
> been retained (Exhibits 17E and 19E). Although
> the claimant's grades have ranged from A's to F's
> in the seventh grade, she obtained mostly C's in the
> eighth grade. In fact, when the claimant withdrew
> from school in January 1988, she had A's and B's
> with a grade point average (GPA) of 3.09 (Exhibit
> 19E, page 1).

Further, in connection with listing 12.05 C, the law judge explained (id.):

> The record includes evidence of good day-to-day
> functioning. In fact, the claimant testified that she
> rides the bus and looks for cans for money. She
> looks for jobs in the papers, and she is able to
> apply for a job on her own. She performs activities
> of daily living independently, including raising her
> two children. The record, as a whole, fails to
> establish significant deficits of adaptive
> functioning.

The conclusion that the plaintiff does not have deficits in

adaptive functioning is amply supported by the record. For example, in a

function report, the plaintiff indicated that she prepares her own meals, shops

in stores, pays bills, counts change, and watches television (Tr. 145-52).

Further, at the administrative hearing, the plaintiff testified that, although she

has not driven in "some years," she had a driver's license in California (Tr.

49-50). Merikye Gibbons, the plaintiff's friend, reported that the plaintiff

rides a bicycle, cares for her teenage children, performs her own personal care, "[k]eeps her house nice and clean," shops in stores, pays bills, counts change, goes to the movies with family, and attends church (Tr. 171-78). With respect to preparing meals, Gibbons said that the plaintiff prepares "pretty much everything" except barbeque (Tr. 173).

The plaintiff challenges the law judge's statement that her "school records do not reflect she was in special education classes in California or Florida, nor does the record reflect that she has been retained," which was a basis for the finding that "there is no indication in the record that the claimant had deficits in adaptive functioning prior to age 22" (Doc. 19, p. 20; see Tr. 27). This contention fails for several reasons.

On this issue, the plaintiff points out that she enrolled in Reid Continuation School after her sixteenth birthday. The plaintiff asserts that Reid Continuation School "was and is an alternative school for students with special needs" (Doc. 19, p. 21). Pointing to her hearing testimony, the plaintiff further states that "[t]he special needs of which Plaintiff was aware was for slow learners" (id.).

However, as the Commissioner responds, enrollment in continuation schools may be due to academic literacy issues, a series of

behavioral issues, or poor attendance at the student's previous school (Doc. 20, p. 14, citing Doc. 19-1, p. 14).  Further, the California Department of Education's website (http://www.cde.ca.gov/sp/eo/ce/) explains:

> Continuation education is an alternative high school diploma program. It is for students who are sixteen years of age or older, have not graduated from high school, are still required to attend school, and who are at risk of not graduating.
>
> Many students in continuation education are behind in high school credits. Others may need a flexible school schedule because they have jobs outside of school. Some students choose continuation education because of family needs or other circumstances.

As indicated, the law judge reasonably found that the plaintiff's testimony was not fully credible, and the plaintiff has failed to challenge that determination.  The plaintiff has presented no other evidence to support the suggestion that she was in fact enrolled in the continuation school because she was a slow learner.  Notably, the plaintiff's eighth grade transcript states that she had unsatisfactory conduct in some of her classes, and she was absent 26 days (Tr. 232).

The plaintiff further speculates that, presuming first grade is started at the age of 6, "Plaintiff had to be retained at least one year to be

almost 16 years old in the eighth grade"(Doc. 19, p. 20). Even if the plaintiff was retained for a year, she has not shown that such retention was due to any deficits in adaptive functioning.

Consequently, the law judge could reasonably conclude, as she did, that the plaintiff's academic records do not support a finding of deficits in adaptive functioning prior to age 22. Thus, the plaintiff attended a regular school in the eighth grade, when she earned mostly C grades, and there is no indication that she was in special education classes that year.

Moreover, it is not enough for the plaintiff to point to some evidence that would support a finding that the plaintiff had deficits of adaptive functioning prior to age 22. Rather, the plaintiff must demonstrate that the evidence compels such a finding. Adefemi v. Ashcroft, supra. The plaintiff has not made that showing.[4]

---

[4]In concluding that the law judge could reasonably find that the plaintiff did not have deficits in adaptive functioning prior to age 22, I have accepted the presumption that a condition of mental retardation remains stable, so that if an individual manifests that impairment years after she reached age 22, it is appropriate to presume that she had the same impairment prior to age 22, absent some head trauma. See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). Nevertheless, I seriously doubt that the presumption is appropriately applied here in light of the plaintiff's long-term history of cocaine addiction, including crack cocaine, and alcohol abuse. Her use of these substances for many years could significantly diminish her mental capabilities and make application of the presumption faulty.

In all events, the plaintiff not only has to establish that she had deficits in adaptive functioning prior to age 22, but also that she has them now. As previously shown, the law judge found that "[t]he record includes evidence of good day-to-day functioning" and that it, "as a whole, fails to establish significant deficits of adaptive functioning" (Tr. 27). The plaintiff has not meaningfully challenged this finding. This finding, alone, is enough to defeat the plaintiff's claim that she meets, or equals, listing 12.05 B.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: NOVEMBER 21, 2014

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).